# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Fashira Crawford,

        Petitioner,

Court File No.: 13-CV-2462 (JRT/SER)

v.

**REPORT AND RECOMMENDATION**

J.A. Nicklin,

        Respondent.

---

Fashira Crawford, *Pro Se*, No. 08095-030, FCI Waseca, P.O. Box 1731, Waseca, Minnesota, 56093.

David W. Fuller and Gregory G. Brooker, Esqs., United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Respondent.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Petitioner Fashira Crawford's ("Crawford") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.") [Doc. No.1]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends denying the Petition and dismissing the action.

**I.     BACKGROUND**

Currently Crawford is an inmate at the Federal Correctional Institute in Waseca, Minnesota ("FCI Waseca"), where she is serving a 120-month sentence that will be followed with five years of supervised release. (Decl. of Julie Groteboer, "Groteboer Decl.") [Doc. No. 6 ¶¶ 3–4]. Judge Jarvey of the Southern District of Iowa sentenced Crawford after she was convicted of "Conspiracy to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(b)(1)(A)

and 846." (*Id.* ¶ 4). Crawford's projected release date, taking into account good conduct time ("GCT"), is September 12, 2014. (*Id.* ¶ 5).

On April 2, 2013, Crawford's Case Manager and Unit Manager ("Unit staff") reviewed her application for pre-release placement in a Residential Reentry Center ("RRC") under the five factors of the Second Chance Act ("SCA"), 18 U.S.C. § 3621(b).[1] (*Id.* ¶ 6). In making their RRC determination, they reviewed: the resources available at the RRC facilities, the nature of Crawford's charges and pertinent policy statements issued by the Sentencing Commission, as well as Judge Jarvey's failure to recommend RRC placement. (*Id.* ¶¶ 6–7). The Unit staff also considered Crawford's history and characteristics, including her participation in educational and vocational programs, completion of her General Educational Development ("GED"), participation in the Drug Education Program ("DEP") and the Inmate Financial Responsibility Program ("IFRP"), and her good work performance reviews. (*Id.* ¶ 8). In addition, her disciplinary history and relevant prior criminal history, including three incidents that were classified as moderate security level, her family support, life skills, and financial and community resources were contemplated. (*Id.*). Unit staff also determined that Crawford had not secured residence or employment and thus was not suited for direct home confinement and that she "did not present any extraordinary information to support an extended RRC placement." (*Id.*). After their review, Unit staff recommended a 151- to 180-day (a five to six month) RRC placement which the Unit staff deemed "sufficient to provide the greatest likelihood of successful reintegration into the community." (*Id.* ¶ 9). On April 2, 2013, Crawford was informed of the recommendation. (*Id.*).

---

[1]   An RRC is similar to a halfway house.

On May 13, 2013, Crawford submitted to Warden Nicklin a Request for Administrative Remedy ("BP-9"), in which she requested an additional sixty days of RRC placement and that an individualized assessment be performed under 18 U.S.C. § 3621(b) and § 3624(c). (*Id.* ¶ 11). Warden Nicklin denied Crawford's request on May 31, 2013, and explained that Crawford had been evaluated pursuant to the factors listed in the SCA. (*Id.*).

Crawford filed a Regional Administrative Remedy Appeal requesting additional RRC placement on June 21, 2013. (*Id.* ¶ 12). The Region denied this request on June 27, 2013, after it was determined that Unit staff properly conducted a review under the SCA. (*Id.*).[2] A Supervision Release Plan was prepared on September 23, 2013, where a 151- to 180-day RRC placement was again recommended by Unit staff. (*Id.* ¶ 10); (Supervision Release Plan/Institutional Referral, "Supervision Release Plan," Attach. D., Attached to Groteboer Decl.) [Doc. No. 10-1]. The Supervision Release Plan will be reviewed by the Warden and then will be submitted to the Community Corrections Manager who will make the ultimate RRC placement decision. (Groteboer Decl. ¶ 10).

Crawford filed her Petition on September 5, 2013, pursuant to 28 U.S.C. § 2241. *See* (Pet.). In her Petition, Crawford requests that the Court issue a writ of habeas corpus directing Warden Nicklin to transfer or release her to an RRC immediately "by granting a 12[-]month placement according to the applicable law." (*Id.* at 1). Crawford argues that she is seeking additional RRC placement to acquire additional reentry skills to help her reintegrate into society. (*Id.* at 3).

Crawford advances multiple arguments in her Petition. First, she argues that the United States Bureau of Prisons's ("BOP") determination of eligibility for RRC placements longer than

---

[2] Crawford had not filed an appeal to the Central Office as of October 4, 2013. (Groteboer Decl. ¶ 13).

six months is arbitrary and capricious and therefore her request for additional RRC placement has not been considered in good faith by the FCI Waseca staff. (*Id.* at 1, 4–6). Second, Crawford argues that she is entitled to a twelve-month RRC placement and that the BOP is acting contrary to applicable law because its practice is to only place inmates in an RRC for up to six months. (*Id.* at 5–6). Third, Crawford argues that Warden Nicklin failed to act in good faith when considering her request for additional RRC placement because the FCI Waseca staff did not "consider her marketable job skills, housing needs or her detrimental social status as a 'felon' in refusing to provide her with 12 months [of RRC] placement." (*Id.* at 6).

## II. DISCUSSION

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). But writs of habeas corpus "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

### A. Exhaustion of Administrative Remedies

"A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP." *Mathena v. United States,* 577 F.3d 943, 946 (8th Cir. 2009) (citations omitted). The administrative remedy procedure at the BOP is a three-tiered process. *See* 28 C.F.R. § 542.13–542.15. The first stage is an informal resolution where the prisoner presents his or her claims to the staff, and if unsuccessful, then files a formal grievance with the Warden. § 542.13–14. An inmate that is still dissatisfied may submit an appeal to the Regional Director. § 542.15. Finally, if the inmate is still dissatisfied, the inmate can appeal to the General Counsel on a form designed for Central Office Appeals. *Id.* An inmate's administrative remedies have been exhausted when the inmate either: (1) receives a response

from the Central Office or (2) the Central Office exceeds its time to reply, including any extensions for reply that have been granted. §§ 542.15, 542.18.

Crawford asks the Court to waive the exhaustion requirement as she failed to appeal to the Central Office. (Pet. at 2–3); *see* (Nicklin's Response to Pet., "Nicklin's Resp.") [Doc. No. 5 at 8–10]. Crawford alleges that exhausting her administrative remedies would prejudice her chance at timely relief from the Court. (Pet. at 2–3). Warden Nicklin argues that Crawford's Petition should be dismissed because of her failure to exhaust her administrative remedies because any potential prejudice to Crawford's ability to obtain timely relief from the Court was caused by Crawford's own delays. (Nicklin's Resp. at 9). Warden Nicklin highlights that Crawford waited over a month after being informed of her RRC recommendation on April 2, 2013, to file her administrative remedy request at the institutional level and then waited over two months after learning that she was denied at the Regional level before filing the instant Petition, in lieu of an appeal to the Central Office. (*Id.*). Further, Warden Nicklin argues if Crawford is allowed to circumvent the administrative remedies procedure, it will encourage other inmates to engage in the same behavior. (*Id.* at 9–10).

The Court agrees that Crawford has not fully exhausted her administrative remedies by failing to appeal to the Central Office. The Court, however, considers the merits of Crawford's Petition in the interest of providing Crawford with an adjudication on the merits. *See Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) ("[O]ur jurisdiction to decide this case is not affected by [petitioner's] alleged failure to exhaust his administrative remedies because the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional."); *United States v. Dico, Inc.*, 136 F.3d 572, 576 (8th Cir. 1998) ("The exhaustion requirement is designed to '[protect] administrative agency authority and [promote] judicial

5

efficiency,' and those are the policies a court must keep in mind in making the waiver decision.") (internal citations omitted).  The Court, therefore, does not decide whether Crawford's delay contributed to her failure to exhaust her administrative remedies, instead the Court waives the exhaustion requirement given the particular timing circumstances in this case.

### B. RRC Placement Determination

#### 1. Applicable Legal and Regulatory Framework

Federal law authorizes the BOP to provide appropriate housing for federal inmates and federal law gives the BOP discretion in satisfying the responsibility.  *See* 18 U.S.C. § 3621.  The applicable statute provides:

> (b) **Place of imprisonment.**—The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> > (1) the resources of the facility contemplated;
> >
> > (2) the nature and circumstances of the offense;
> >
> > (3) the history and characteristics of the prisoner;
> >
> > (4) any statement by the court that imposed the sentence—
> >
> > > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > >
> > > (B) recommending a type of penal or correctional facility as appropriate; and
> >
> > (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters,

6

direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

18 U.S.C. § 3621(b).

The SCA must be read in conjunction with the BOP's authority under § 3621 because an RRC is a place of imprisonment. *Robeson v. English*, 12-cv-647 (DSD/JSM), 2012 WL 4872672, at *2 n.4 (D. Minn. Oct. 15, 2012) (citing *Miller v. Whitehead*, 527 F.3d 752, 755 n.3 (8th Cir. 2008)). The SCA addresses specifically with RRC determinations and provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility. . . . Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

The Second Chance Act of 2007, Public Law No. 110–199, 122 Stat. 657, effective April 9, 2008, amended 18 U.S.C. § 3624(c). The SCA also provides that the BOP Director must issue regulations to ensure RRC placement determinations are "consistent with section 3621(b) . . . ; determined on an individual basis; and of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624 (c)(6).

The BOP issued a Guidance Memorandum on April 14, 2008, where it advised that in conducting RRC assessments, the staff must comply with Program Statement ("PS") 7310.04:[3]

---

[3] PS 7310.04 is a Program Statement issued by the BOP in 1998 dealing with when the BOP will place an inmate in an RRC. U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 7310.04 (1998), *available at* http://www.bop.gov/policy/progstat/7310_004.pdf (last visited Jan. 27, 2014). "[I]t is well-established that this policy [PS 7310.04] does not contravene

7

> [S]taff must not view any criteria listed in PS 7310.04 . . . or any other policy, as automatically precluding an inmate's pre-release RRC placement. Rather, in accordance with the Act, each individual inmate's pre-release RRC decision must be analyzed and supported under the five-factor criteria.
>
> [S]taff must approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement.
>
> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

*Hewitt v. Jett*, No. 09-cv-1676 (RHK/RLE), 2010 WL 1417654, at *3 (D. Minn. Mar. 15, 2010)

*report and recommendation adopted*, 2010 WL 1416890 (Apr. 6, 2010).

> Then the BOP adopted interim regulations on October 21, 2008, providing:
>
> a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
>
> b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21.

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

---

18 U.S.C. § 3621(b)." *Mickelson v. Holinka*, No. 06-cv-4261(JNE/SRN), 2007 WL 2262877, at *2 (D. Minn. Aug. 3, 2007) (citations omitted).

28 C.F.R. § 570.22.

The BOP issued another memorandum on November 14, 2008, which reiterated that the earlier April 14, 2008 Memorandum remained effective. *Hewitt*, 2010 WL 1417654, at *3.

### 2. No Right to Twelve-Month RRC Placement

Crawford argues that she is entitled to a twelve-month placement in an RRC. (Pet. at 6). This argument fails. *See, e.g.*, *Stanko v. Rios*, No. 08-cv-4991(JNE/JJG), 2009 WL 1303969, at *3 (D. Minn. May 8, 2009) *aff'd*, 366 F. App'x 725 (8th Cir. 2010) ("Stanko has no affirmative right to placement in a halfway house, or the twelve months' placement that he demands in his petition."); *Rounds v. Nicklin*, No. 13-cv440 (MJD/AJB), 2013 WL 3088628, at *3 (D. Minn. June 18, 2013). The SCA affords the BOP discretion in determining whether an inmate should be placed in an RRC and, if so, for how long, up to the twelve-month maximum. *See Heppner v. Roal*, No. 09-cv-2926 (PAM/JJK), 2010 WL 1380141, at *1 (D. Minn. Mar. 31, 2010). The SCA does not mandate the BOP grant any time in an RRC, however, it does require the BOP to exercise its discretion only after providing each inmate with an individualized analysis. *See* 28 U.S.C. § 3624(c)(6)(B); *Rounds*, 2013 WL 3088628 at *3. Thus, Crawford is not entitled to a twelve-month RRC placement as she contends.

### 3. BOP Conducted an Adequate Review

The SCA entitles an inmate to an RRC assessment "that is conducted in a manner that is consistent with the SCA." *Rounds*, 2013 WL 3088628, at *3 (emphasis omitted). In making its RRC determination, "the BOP must simply consider a prisoner's request for a halfway house transfer 'in good faith' and in accordance with the factors in 18 U.S.C. § 3621(b)." *Raymer v. Cruz*, No. 08-cv-6382 (MJD/JJG), 2009 WL 2778073, at *1 (D. Minn. Aug. 28, 2009) (citing *Miller*, 527 F.3d at 758).

The five factors for consideration include:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—

    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Because of the BOP's broad discretion in designating inmates to correctional facilities, a court reviewing an RRC placement determination is limited to considering whether the BOP abused its discretion in reaching its determination. *Bania v. Roal*, No. 11-cv-925 (SRN/TNL), 2011 WL 7945547, at *3–4 (D. Minn. Oct. 24, 2011) (citing *Fegans v. United States*, 506 F.3d 1101, 1103–05 (8th Cir. 2007)). A brief response from the warden to an RRC request suffices because the BOP is not required to provide an inmate with a detailed statutory analysis. *Eickleberry v. Jett*, No. 11-cv-443 (DSD/JSM), 2011 WL 6754075, at *10 (D. Minn. Dec. 7, 2011) *report and recommendation adopted*, 2011 WL 6755184 (Dec. 23, 2011).

Crawford argues that the BOP's RRC determination in her case was not made in good faith and did not provide her due deference. (Pet. at 1). Crawford also argues that Warden Nicklin failed to act in good faith when considering her request for additional RRC placement because the FCI Waseca staff did not "consider her marketable job skills, housing needs or her detrimental social status as a 'felon' in refusing to provide her with 12 months placement." (*Id.* at 6).

10

Crawford's application for pre-release placement received a proper review by FCI Waseca's Unit staff pursuant to the five factors listed in section 3621(b) on April 2, 2013. *See* (Groteboer Decl. ¶¶ 6–9); (Review for Residential Reentry Center, "Review for Reentry," Attach. C, Attached to Groteboer Decl.) [Doc. No. 6-1]. The review contemplated the resources available at the RRC facilities, the nature of Crawford's charges, Crawford's history and characteristics including "that she had participated in educational and vocational programs, had achieved her GED, had participated in . . . DEP, had good work performance reviews, and participated in the . . . IFRP[,]" her disciplinary history and relevant prior criminal history including three incidents that were classified as moderate security level, her family support, life skills, and financial and community resources. (*Id.* ¶¶ 6–8). Only after consideration of the applicable factors did Unit staff recommended a 151- to 180-day RRC placement for Crawford as sufficient to afford the greatest likelihood of a successful reintegration. (*Id.* ¶ 9). In addition, a review of the Unit staff's assessment shows that the Unit staff considered Crawford's job skills and housing needs in making their assessment. (Review for Reentry). Because the Unit staff conducted an individualized review pursuant to the factors listed in the SCA, its RRC determination was proper and not an abuse of discretion. *See Rounds*, 2013 WL 3088628, at *3 (dismissing petition for habeas corpus challenging RRC determination when a proper individualized review was conducted and petitioner failed to show a lack of good faith); *Hewitt*, 2010 WL 1417654, at *6–8 (refusing to disrupt BOP's RRC determination when a proper individualized review was conducted under the SCA).

    C.    **Administrative Procedure Act Claims**

Title 5 U.S.C. § 706 of the Administrative Procedure Act ("APA") provides a cause of action for individuals experiencing a legal harm because of agency action and offers a means for

holding agency actions unlawful when they are arbitrary, capricious, or an abuse of discretion. *Han v. Benov*, No. 10-cv-1276, 2011 WL 4084185, at *4 (E.D. Cal. Sept. 13, 2011) (citing 5 U.S.C. §§ 702, 706(2)(A); *Rebb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011)). Specifically, the APA provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]

Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (2006).

This provision of the APA is limited under the SCA, which provides "[t]he provisions of sections . . . 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625. In considering the applicability of § 3625 to a discretionary decision of the BOP under § 3621, the Ninth Circuit explained, "[t]o find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625." *Reeb*, 636 F.3d at 1227. The Ninth Circuit thus found the BOP's discretionary decision, was "not subject to judicial review." *Id.* (considering the BOP's discretionary decision of admission to a particular Residential Drug Abuse Program ("RDAP") under § 3621(e)).

*Reeb* has been applied to other discretionary decisions by the BOP under other subsections of § 3621, including the BOP's discretionary decision to make RRC placement determinations under § 3621(b). *See, e.g.*, *Han*, 2011 WL 4084185, at *5 (considering Petitioner's argument that the BOP's denial of his RRC transfer request was arbitrary and capricious under the APA and stating that "the BOP's substantive, discretionary RRC decision

adverse to Petitioner is not reviewable in the district court pursuant to § 706(2)(A) of the APA."); *Sanders v. Ledezma*, No. 11-cv-391, 2011 WL 4476742, at *2 n.14 (W.D. Okla. Sept. 7, 2011) (stating § 706(2)(A) of the APA does not apply to BOP determinations of RRC placement under the SCA); *English v. Ives*, No. 11-cv-0010, 2012 WL 4038495, at *5 (E.D. Cal. Sept. 12, 2012) ("To the extent petitioner is arguing that the BOP's denial of RRC placement is arbitrary and capricious under 5 U.S.C. § 706(a)(A) of the Administrative Procedure Act, this court lacks jurisdiction over his claim.").

Courts in this District have also found § 3625 precludes judicial review of BOP discretionary decisions under § 3621. *See Barakat v. Fisher*, No. 13-1296 (JNE/SER), 2013 WL 6058932 (D. Minn. Nov. 18, 2013) ("To the extent Barakat challenges the particular determination in his case of the RRC placement, the Court lacks subject matter jurisdiction to review the Bureau of Prison's ("BOP") discretionary decision[.]"); *Davis v. English*, No. 12-cv-1483 (JNE/LIB), 2013 WL 1149526, at *6–7 (D. Minn. Feb. 27, 2013) *report and recommendation adopted*, 2013 WL 1149769 (Mar. 19, 2013) (finding § 3625 barred judicial review of petitioner's claim that BOP's decision to exclude him from participation in the RDAP, a decision made under § 3621, was arbitrary and capricious under § 706 of the APA); *Rios v. Fisher*, No. 10-cv-4020 (PJS/TNL), 2012 WL 2814338, *2–3 (D. Minn. June 19, 2012) *report and recommendation adopted*, 2012 WL 2814325 (July 10, 2012).

In alleging the BOP's RRC determination in her case was arbitrary and capricious, not made in good faith, and made without providing her due deference and in arguing that it is the BOP's practice to only allow up to six months of RRC placement without consideration of the factors of the SCA, Crawford seems to be arguing that BOP's action was in violation of the APA. *See* (Pet. at 1, 4–6). To the extent Crawford is making such an argument and seeks review

13

of the BOP's RRC determination—one that is discretionary pursuant to § 3621(b)—the Court finds that it lacks subject matter jurisdiction to decide the issue because of 18 U.S.C. § 3625.

Moreover, even if the Court could hear Crawford's APA claim, her claim would still fail under the applicable standard of review. "Under the arbitrary and capricious standard, [the court's] review . . . is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Sacora v. Thomas*, 628 F.3d 1059, 1067 (9th Cir. 2010) (citing *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009)); *see Missouri Limestone Producers Ass'n, Inc. v. Browner*, 165 F.3d 619, 621 (8th Cir. 1999) (citations omitted). As discussed above, Crawford's request for a twelve-month RRC placement was given a proper, good faith analysis under the SCA. The necessary reasonable basis for the BOP's determination, therefore, was satisfied and Crawford's claim fails. In addition, Crawford's claim that the BOP's practice is only to place prisoners in RRC placements for up to six months regardless of the factors of the SCA fails as there is no evidence before the Court supporting this allegation.

## III.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Crawford's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Doc. No. 1] be **DENIED**; and

2. This action be **DISMISSED**.

Dated: January 27, 2014

*s/ Steven E. Rau*
Steven E. Rau
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by February 10, 2014, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.